HARRISON *v.* KNAFLE *et al.*

(*Knoxville.*   September Term, 1913.)

1. **MECHANICS' LIENS.   Time for filing notice.   Completion of building.**

Under a contract for construction of a building, including the installing of a sprinkler system, to be approved by the State Inspection Bureau, the building is not completed, as regards the thirty days thereafter for filing notice of lien, till the work required by the bureau on its inspection is done. (*Post, pp.* 334, 335.)

Case cited and approved:   Voightman v. Railroad, 123 Tenn., 463.

2. **BANKRUPTCY.   Priorities.   Liens.**

Relative to the question of certain creditors of a bankrupt contractor being entitled to priority as having filed notices of lien within thirty days of completion of a building, the bankrupt's trustee is bound by the agreement of the contractor and building owner in extending time for the completion. (*Post, p.* 338.)

3. **MECHANICS' LIENS.   Time for filing notice.   Enlargement of contract.**

Within the statute giving materialmen thirty days from completion of the work provided by the contract within which to file notices of liens, they have thirty days from completion of the work as enlarged by amendment of the contract between the owner and contractor, though part of their material was furnished before such amendment and all of it was for the work previously provided for by the contract. (*Post, p.* 339.)

FROM KNOX.

Appeal from Chancery Court, Knox County.—Will D. Wright, Chancellor.

Jesse L. Rogers, for appellant General Fire Extinguisher Co.

J. Bailey Wray, for appellant Alex A. Scott Brick Co.

Culton & Morrill, for appellant Tennesse Mill & Mining Supply Co.

Green, Webb & Tate, for appellee.

Mr. Justice Lansden delivered the opinion of the Court.

Harrison is the trustee in bankruptcy of the S. M. Beaumont Company and filed this bill in the chancery court for the purpose of contesting with the General Fire Extinguisher Company, the Tennessee Mill & Mining Supply Company, and the Alex A. Scott Brick Company the claims of the latter to a furnisher's lien in certain fund paid into court by Knafle and wife to represent the value of two certain houses constructed for them by S. M. Beaumont Company, the complainant's bankrupt.

The question here is whether the lien claimants are entitled to priority in the fund representing the real estate over the general creditors of the bankrupt.

The Alex A. Scott Brick Company and the Tennessee Mill & Mining Supply Company furnished the ma-

terial used in the construction of the buildings, and the Fire Extinguisher Company installed an automatic fire extinguishing plant in the two buildings. It is not claimed that the Brick Company or the Supply Company have given thirty days' notice from the last date of materials furnished by them. It is claimed by them, however, that their notice was given within thirty days after the completion of the buildings, and this is likewise the claim of the Fire Extinguisher Company. Whether or not this is true depends upon the effect to be given to certain work done upon the sprinkler system December 26th, 27th, and 28th. The notice of each of the claimants was given within thirty days from those dates, but, if the work done upon the dates referred to does not fall within the contemplation of the building contract, notices are not within time.

This makes it necessary to state the contract between S. M. Beaumont Company, the principal contractor, and Knafle and wife, as the owners for the construction of the two buildings. The buildings were adjoining each other and were to be built on lots of a frontage of fifty feet each and according to plans and specifications prepared by certain architects and revised and approved by the contractor. These drawings and specifications were made parts of the contract. The original contract provided that "no payment made under this contract except the final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, and no pay-

Harrison v. Knafle.

ment shall be construed as an acceptance of defective work or improper material.''

Soon after the execution of this contract, and before any material part of the work in the construction of the buildings was done, the parties agreed in parol to enlarge the terms of the original contract by providing that one of the buildings should have an addditional story above the basement, and a complete automatic water sprinkler system should·be put in both buildings, but as one system, by the contractor. The water sprinkler system was to be continuous through both buildings with one pressure tank and one supply pipe for the system. The contractor, after this enlargement of his contract with the owner, entered into a written contract with the Fire Extinguisher Company by which that company agreed to install the sprinkler system in accordance with a contract between the contractor and the owner. This contract provided that the material should be of standard quality and the work done in a thorough and workmanlike manner and in conformity with plans to be approved by the Tennessee Inspection Bureau. The specifications provided, after designating the number of automatic sprinklers, pipes, fittings, hangers, and the like, that it shall be installed ''in a thorough and workmanlike manner, and in strict conformity with the rules and requirements of the within-named insurance interests.''

It is also provided in the contract ''that it is the intention of this contract to cover a complete equipment in every respect and install in a manner that will

meet with the approval of the within-named insurance interests and Beaumont Bros., architects.''

The evidence shows that one of these buildings was completed so that a tenant was placed in it August 1, 1912, and the other was completed and occupied by tenant November 6, 1912.  The sprinkler system was installed in the two buildings in such manner that the foreman of the Fire Extinguisher Company believed it to be in compliance with the contract between that company and the principal contractor  some time in October, and certainly in November, 1912.  The sprinkler system was inspected by an inspector of the Tennessee Inspection Bureau, in October, and water was turned into the system November 6, 1912.  Insurance was effected on the buildings November 6th, and the sprinkler system was believed by the insurance agent to be complete, judging alone, however, from its general appearance.

One of the buildings was used as a factory for the manufacture of overalls, pants, and the like, and, in the course of manufacturing these articles, it is necessary to use large tables upon which the garments are cut.  These tables were installed after the building was leased to this tenant, and it became necessary to add a number of sprinkler heads under these tables because the tables cut off the protection to the floor which would be afforded by the sprinkler heads located in the ceiling over the tables.  This work was done December 26, 27, and 28, 1912, and there is no claim by the lien claimants that this additional work

would fall within the contract between the parties so as to extend the time of their lien. The claim made by the lienors is that the contract for the construction of the sprinkler system required that the system be approved by the Tennessee Inspection Bureau before it was complete or would be accepted by the owner, and that the system as first installed was inspected by that bureau and disapproved until certain other things were done about it, and that this work was not done until the dates last named. The inspector reported the system equipment to be good in general, the piping well installed, and the heads arranged both staggered and in regular order; that the water supply was good; and that the equipment should control any ordinary fire originating in the building. The inspector also recommended that a sprinkler head located against a steam pipe be moved eight inches, and that a hanger should be placed on the end of the line; that certain crooked sprinklers should be straightened up, and all high heads should be lowered, so that the deflectors would be at least three inches below the bottom of the beams in the basement; that the alarm should be placed in proper working order and plugs inserted in drain valves. He also recommended that an additional head should be placed over the deck of the stairs on the second floor.

Under the authority of *Voightman* v. *Railroad,* 123 Tenn., 463, 131 S. W., 982, Ann. Cas., 1912C, 211, if the improvements suggested by the inspector were provided for by the contract for the installation of the

sprinkler system, and a material part of it, and this work was not properly done by the subcontractor, the building could not be considered as completed until after the improvements were made in December. If, however, it was merely an unimportant or an inconsiderable thing not of the essence of the contract, or. if it was merely to supply defective material or to repair defective work, it would not extend the time for the furnisher's lien.

As to whether this work was necessary to make the sprinkler system a completed one and such as would be approved by the Tennessee Bureau of Inspection is a matter of proof. The witness Clark, foreman of the Fire Extinguisher Company, states at one place in his testimony that the plant could not be considered as completed unless the improvements recommended by the inspector were placed in order and the corrections made, and he says specifically that the work done December 26th, 27th, and 28th was necessary to complete the installation of the plant. This testimony is not entitled to great weight, in view of the fact that the witness had previously stated that, when the water was turned on November 6th, he regarded the system as completed within the meaning of the contract. It appears from this witness' testimony that the improvements suggested by the inspector were sent to the home office of the Inspection Bureau, and from there to the general office of the Fire Extinguisher Company, and from the office of the Fire Extinguisher Company to this witness, and that he received the designations for

improvement some time in November. He also says that the work of making these improvements was postponed by agreement between the owner and the contractor for the convenience of the tenant until the Christmas holidays. The inspector inspected the building October 19, 1912. At this time he directed certain improvements to be made in the sprinkler system, and he says that these improvements were necessary to be carried out by the Fire Extinguisher Company before the Inspection Bureau would recognize it as a completed system. He says that it would not be a standard system with the suggested improvements left off, and that he would not recommend it to the bureau until the "little defects" mentioned in the report were corrected.

He was asked if the matters of moving the sprinkler from near the radiator, fixing the alarm, and the use of the additional hangers were unimportant matters, and he replied that it would be necessary for these things to be done to complete the system, but that they were not as important as the installing of the extra heads under the work tables. It appears that, in order to lower the sprinkler heads in the basement so that they would be three inches below the beams, it was necessary to lower the pipes in the basement about twenty-five inches. He was again asked if all the improvements recommended by him were important, and he answered as follows:

"In inspecting we do not take into consideration whether they are important or not. They are sim-

Harrison v. Knafle.

ply necessary to get the maximum protection and might never be used, while again they might. . .. . Some of them were small matters. The question of putting an additional hanger on did not amount to as much as moving the head from the steam pipe. They simply meant additional protection to the occupant of the building and to the owner.''

He again states that the system would not have been recognized until all of the improvements that were reported, after the inspection, had been put in and the recommendations carried out.

The learned chancellor held that the building was not completed until the improvements required by the Tennessee Inspection Bureau were put in by the Fire Extinguisher Company for the reason that the approval of the Inspection Bureau was of the essence of the contract between the Fire Extinguisher Company and the principal contractor, and that under the proof the importance, or expensiveness, or extensiveness of the improvements was not entitled to particular weight, because the approval of the Inspection Bureau was the thing that must be obtained by the Extinguisher Company before its contract was complete.

We think this is a correct view. The parties can by mutual consent make the completion of the building to depend upon any lawful event which may suit their purposes. The purpose of installing the sprinkler system was of course to reduce insurance rates, and under the testimony the insurance rate would be gov-

erned by the recommendation of the Inspection Bureau so far as this sprinkler system would affect it. So one of the chief values of the sprinkler system to the owner was its approval by the Tennessee Inspection Bureau. This could not be had without the work done in December.

While it is entirely true that the expense of making the improvements and the labor done in connection with them are very small items as compared with the cost and labor of installing the entire system, this does not necessarily mean that the improvements themselves are unimportant. The sprinkler system is intended to extinguish fire automatically by releasing the water under pressure in the pipes when the heat generated by a fire in the building is sufficient to put the system in operation. The sprinkler heads were to be so arranged that they would spray water over the entire surface of the building. It is thus apparent that it was of the first importance that the sprinkler head too near the steam pipe should be removed, and that the sprinkler heads in the basement too near the beams should be lowered so that the water, when released, would be sprayed over the entire area of the basement.

The delay in making these improvements from November until the Christmas holidays was agreed upon by the owner and the principal contractor, the complainant's bankrupt. It was entirely competent for them to make this agreement, and the complainant, as representing creditors, is bound thereby.

Harrison v. Knafle.

It is also insisted that the Brick Company and the Supply Company are not entitled to their liens for the reason that the installation of the sprinkler system in the two buildings was not part of the general contract for the erection of the buildings under which the Supply Company and the Brick Company furnished material. As stated, Mr. and Mrs. Knafle made a contract with the Beaumont Company to erect the two buildings referred to. The Beaumont Company was the principal contractor. Later this contract was enlarged so as to provide for an additional story upon one of the buildings, and the sprinkler system in both the buildings. This addition to the contract was made long before these two claimants furnished all of their material. We think it would be sticking in the bark to say that these claimants are not entitled to their liens upon notice filed within thirty days from the completion of the contract between the owner and the principal contractor simply because the contract between them had been enlarged before the claimants furnished all of their material. The statute says they shall have the lien if they give the notice within thirty days from the completion of the work provided by the contract. This they have done.

Other questions were disposed of orally.